**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1709-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTOINE R. TRENT, a/k/a
MICHAEL SAFOLD,

     Defendant-Appellant.

_____

Submitted September 14, 2022 – Decided September 29, 2022

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-11-1165.

Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the June 15, 2020 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We glean these facts from the record. Defendant was charged in a Union County indictment with two counts of third-degree burglary, N.J.S.A. 2C:18-2 (counts one and three); two counts of third-degree theft, N.J.S.A. 2C:20-3 (counts two and four); second-degree eluding, N.J.S.A. 2C:29-2(b) (count six); and three counts of second-degree aggravated assault during the course of eluding, N.J.S.A. 2C:12-1(b)(6) (counts seven, eight, and nine).[1]

The charges stemmed from defendant's involvement in two car burglaries on April 21 and April 22, 2011, during which defendant stole a 2001 Volkswagen Passat and a 2001 Audi A4. When Union Township police officers Christopher Baird and David Pinto encountered defendant in the Audi and ordered him out of the car, defendant attempted to flee, injuring both officers with the vehicle in the process. In the course of apprehending defendant, Pinto shot defendant twice, resulting in an injury to defendant's eye.

---

[1] The two codefendants charged in the indictment are not participants in this appeal.

A-1709-20

On March 24, 2014, defendant entered a negotiated guilty plea to counts two and four for the theft of the Volkswagen and the Audi, respectively, and counts eight and nine for the aggravated assault of Officers Baird and Pinto, respectively. During the plea colloquy, defendant admitted that when the officers ordered him out of the Audi, he "put the car in reverse and tried to drive away" in an attempt to elude the police. Defendant acknowledged that during his attempt to flee, both officers were injured. According to defendant, Baird, who was partially inside the Audi, "fell out [of] the car when [defendant] was backing up," and "[t]he driver's side bumper" of the car hit Officer Pinto "in a knee."

Additionally, at the plea hearing, the following colloquy occurred between the judge and defendant:

> [COURT:] Did you see the discovery in the case?
>
> [DEFENDANT:] Yes.
>
> [COURT:] Did you read it?
>
> [DEFENDANT:] Yes.
>
> [COURT:] You met and you talked to your attorney on a number of occasions?
>
> [DEFENDANT:] Yes.
>
> [COURT:] He went over the discovery with you?

3

[DEFENDANT:]  Yes.

[COURT:]  He analyzed the legal and factual issues in the case with you?

[DEFENDANT:]  Yes.

[COURT:]  He talked to you about the strengths and weaknesses of the case from the State's point of view and from your point of view?

[DEFENDANT:]  Yes.

[COURT:]  He went over the potential witnesses with you --

[DEFENDANT:]  Yes.

[COURT:]  -- and . . . where they would help you and where they would hurt you?

[DEFENDANT:]  Yes.

. . . .

[COURT:]  Did he answer all of your questions?

[DEFENDANT:]  Yes.

. . . .

[COURT:]  Is there anything you asked him to do that he didn't do?

[DEFENDANT:]  No.

A-1709-20

The judge further confirmed that defendant understood he would receive "consecutive" eight-year sentences on counts eight and nine, each subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for "an aggregate of [sixteen] years" of imprisonment. Defendant averred he understood he would "not become eligible for parole" until he had served "[thirteen] years, seven months, and nine days." Defendant also acknowledged that he completed the plea forms with his attorney, which reflected the consecutive sentences, and defendant verified that he understood everything in the forms and that all the answers on the forms were truthful and accurate. Defendant further acknowledged that he understood all the terms and conditions of the plea agreement, confirmed that no one had promised him anything else, and denied that anyone forced, threatened, or pressured him into pleading guilty. After determining that the requirements of Rule 3:9-2, governing the acceptance of guilty pleas, were satisfied, the judge accepted defendant's guilty plea.

On June 27, 2014, defendant was sentenced in accordance with the plea agreement to consecutive terms of eight years of imprisonment, each subject to an eighty-five percent period of parole ineligibility pursuant to NERA, on counts eight and nine, and concurrent five-year terms of imprisonment each on counts

two and four.  At the sentencing hearing, defense counsel unsuccessfully argued for concurrent, rather than consecutive, sentences as contemplated in the plea agreement.

On direct appeal, defendant challenged only his sentence, and we considered the matter on our Excessive Sentence Oral Argument (ESOA) calendar pursuant to Rule 2:9-11.  In an order filed on January 15, 2015, "[w]e remand[ed] for resentencing to allow the trial court to articulate its reasons for imposing consecutive sentences on the two counts of aggravated assault."  On March 6, 2015, during the remand hearing, the judge imposed the same sentence and provided justification for the consecutive terms.  In an order filed October 30, 2015, we affirmed the resentence on our ESOA calendar, and our Supreme Court denied defendant's petition for certification.  State v. Trent, 225 N.J. 221 (2016).

Defendant filed a timely pro se PCR petition asserting his attorney was ineffective by misinforming him that his "sentence would be concurrent with each other."  Defendant stated he "would have proceeded to trial" had he known he would have received "consecutive sentences."  After defendant was assigned PCR counsel, he submitted a supplemental certification in support of his PCR application, adding that his attorney was ineffective for misinforming him about

A-1709-20

"possible defenses that could be presented at a trial" and "pressur[ing him] into pleading guilty instead of taking [his] case to trial."

Specifically, defendant averred that although he asked his attorney to investigate Officer Pinto's claimed injuries, his attorney refused. Defendant asserted he did not recall Officer Pinto striking his knee against the bumper of the car despite his contrary statement during his plea allocution. Defendant stated that based on his review of the police reports "in much more detail," Pinto "never even claimed he injured his knee at the scene or when he went to the doctor. He only claimed he had an elevated heart rate and was nervous because he had been in a stressful situation."

According to defendant, his attorney "never explained to [him] that, at trial, he would be able to cross[-]examine" Pinto about the omission and "never discussed" with him that Pinto was apparently suffering from "stress surrounding his shooting [defendant in the eye], rather than any supposed knee injury." Defendant stated that because his attorney "never told [him]" the extent of injuries needed to meet "the legal standard" for the aggravated assault offense to which he pled guilty, he felt he had no "legal defenses" and no "choice but to accept a plea." See N.J.S.A. 2C:12-1(b)(6) (stating a person is guilty of

aggravated assault if he "[c]auses bodily injury to another person while fleeing or attempting to elude a law enforcement officer").

Following oral argument, Judge Daniel R. Lindemann entered an order on June 15, 2020, denying defendant's PCR petition without an evidentiary hearing. In an accompanying written opinion, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie claim of ineffective assistance of counsel (IAC). Specifically, Judge Lindemann determined that defendant failed to meet his burden of proof in establishing that counsel's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987).

Further, the judge found defendant failed to show that the outcome would have been different without the purportedly deficient performance as required under the second prong of the Strickland/Fritz test. See State v. DiFrisco, 137 N.J. 434, 456 (1994) (applying the Strickland test "to challenges of guilty pleas based on [IAC]" (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985))); see also State v. Gaitan, 209 N.J. 339, 350 (2012) ("With respect to both prongs of the

Strickland test, a defendant asserting [IAC] on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence.").

The judge also concluded that viewing the facts indulgently, defendant was not entitled to an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[W]e consider petitioner's contentions indulgently and view the facts asserted by him in the light most favorable to him."); see also State v. Porter, 216 N.J. 343, 354 (2013) (explaining that an evidentiary hearing is only required when a defendant establishes a prima facie case in support of PCR, the court determines that there are disputed issues of material fact that cannot be resolved by reference to the existing record, and the court determines that an evidentiary hearing is required to resolve the claims asserted (quoting R. 3:22-10(b))).

Specifically, the judge determined "[t]he record . . . [did] not support [d]efendant's contention that counsel was deficient in not recognizing the lack of proof of bodily injury against Officer Pinto, as there [was] evidence of his knee injury and other physical symptoms in the police reports." According to the judge, "[m]ultiple [i]nvestigation [r]eports dated April 23, 2011, the day after the incident, mentioned pain and swelling to Officer Pinto's left knee." In

addition, the judge relied on defendant's admission during the plea colloquy that "[t]he driver's side bumper" of the Audi hit Officer Pinto "in a knee."

Further, "[e]ven without the knee injury," the judge recounted that "various police reports note[d] that due to the stress of the incident, Officer Pinto had an elevated heart rate, shortness of breath, and was treated in the hospital for these symptoms, which were diagnosed as [Post-Traumatic Stress Disorder]." The judge explained that given "the broad definition of bodily injury," the "elements of the offense were . . . established even if [Pinto] did not have the knee injury." See N.J.S.A. 2C:11-1(a) (defining bodily injury as "physical pain, illness or any impairment of physical condition"); see also State v. Sewell, 127 N.J. 133, 135-36 (1992) (considering elevated blood pressure to fall within "'bodily injury' as defined in N.J.S.A. 2C:11-1a").

Next, the judge rejected defendant's claim that his attorney "pressured" him into accepting the plea agreement, concluding defendant's claim was "belied by the record," wherein defendant "denied that he was being pressured." The judge also pointed out that inasmuch as "[d]efendant's claim that he was pressured by counsel to plead guilty rest[ed] largely on his assertion that his attorney never discussed or raised defenses with him," defendant did "not raise any particular or specific defenses before th[e c]ourt." As such, according to

A-1709-20

the judge, "[d]efendant's claims regarding defenses [were] bald assertions" and "the [c]ourt [could] not find that [d]efendant would not have pled guilty but for his attorney's allegedly deficient conduct." See DiFrisco, 137 N.J. at 457 (explaining that to establish the prejudice prong of the Strickland/Fritz test to set aside a guilty plea based on IAC, a defendant must show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." (quoting Hill, 474 U.S. at 59) (alteration in original)); see also Cummings, 321 N.J. Super. at 170 ("[I]n order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

Finally, the judge determined that defendant's claim that his attorney misinformed him that counts eight and nine would have been concurrent, instead of consecutive, was "contradicted by the record." In support, the judge recounted the plea hearing colloquy regarding sentencing and the plea forms defendant admitted reviewing, signing, and understanding. The judge noted that "[e]ven if his attorney told him something different, . . . the recommended sentence . . . was reiterated by the [plea c]ourt multiple times, with [d]efendant agreeing to it." See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, . . . as well as any findings made by the judge

11

accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.").

In this ensuing appeal, defendant raises the following single point for our consideration:

> [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED [IAC] BY FAILING TO INVESTIGATE, REVIEW DISCOVERY, AND DISCUSS POSSIBLE DEFENSES WITH HIM, THEREBY PRESSURING HIM INTO A PLEA, AND ALSO BY MISADVISING HIM ABOUT HIS SENTENCE.

"[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158 (1997) (citations omitted). "[W]here . . . no evidentiary hearing was conducted, we may review the factual inferences the [trial] court has drawn from the documentary record de novo," and "[w]e also review de novo the court's conclusions of law." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

Here, we discern no abuse of discretion in Judge Lindemann's decision to deny defendant's petition without an evidentiary hearing since the facts alleged by defendant did not entitle him to the relief sought. Further, after reviewing the record de novo, we affirm the decision denying PCR substantially for the reasons stated in Judge Lindemann's comprehensive and well-reasoned written opinion. Judge Lindemann thoroughly and accurately addressed defendant's contentions, and the arguments are without sufficient merit to warrant further discussion here. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION